[No. 50263-3.   En Banc.   June 7, 1984.]

KING COUNTY, *Appellant,* v. THE CITY OF ALGONA, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Sandra Cohen, Deputy,* for appellant.

*Ernest F. Crane* (of *Johnson & Crane*), for respondent.

DORE, J.—We hold that the City of Algona lacks express legislative authorization to assess a 7 percent business and occupation tax against King County on revenues received from users of a solid waste plant owned and operated by the County but located within the boundaries of Algona. We reverse, and direct Algona to refund all such B & O taxes paid under protest.

FACTS

On February 23, 1981, the City of Algona enacted a B & O tax of 7 percent on the gross revenues derived from all fees collected at the solid waste transfer station located within the city limits of Algona. The county transfer station

served a wide area of south King County containing an estimated population of 98,000. It was estimated that over 98 percent of the waste processed through the King County station originated from areas outside the Algona city limits. Several months after enactment of the subject tax ordinance, King County commenced this declaratory judgment action, claiming that Algona had no express authorization to assess such a tax and that it was unconstitutional. Both the City and the County moved for summary judgment. The trial court upheld the validity of Algona's B & O tax. The County now appeals.[1]

## DECISION

Article 7, section 9 and article 11, section 12 of the Washington State Constitution permit the State Legislature to grant municipal authorities the power to levy and collect taxes for local purposes.[2] These constitutional provisions are not self–executing. *Carkonen v. Williams,* 76 Wn.2d 617, 458 P.2d 280 (1969). We have consistently held that municipalities must have *express* authority, either constitutional or legislative, to levy taxes. *Citizens for Financially Responsible Gov't v. Spokane,* 99 Wn.2d 339,

---

[1]The City enacted ordinance 432 in February 1981. In 1982, legislation was passed specifically exempting county solid waste facilities from municipal taxation. Laws of 1982, ch. 175, § 8, p. 698 (codified at RCW 36.58.080). The issue in this case concerns the County's liability for the tax from February 3, 1981, the date of the ordinance, to June 20, 1982, the date of the legislation.

[2]Const. art. 7, § 9 provides:

"The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

Const. art. 11, § 12 provides:

"The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes."

662 P.2d 845 (1983); *Hillis Homes, Inc. v. Snohomish Cy.,* 97 Wn.2d 804, 650 P.2d 193 (1982); *Carkonen v. Williams, supra.*

■■ The City of Algona derives its claimed powers from the optional municipal code, RCW Title 35A. RCW 35A.11.020 contains a general grant of taxing power to code cities, and provides in pertinent part:

> Within constitutional limitations, legislative bodies of code cities shall have within their territorial limits all powers of taxation for local purposes except those which are expressly preempted by the state as provided in RCW 66.08.120, RCW 82.36.440, RCW 48.14.020, and RCW 48.14.080.

(These four enumerated statutes refer to liquor, motor fuel excise, and insurance premiums and are irrelevant to the present case.) RCW 35A.82.020 grants code cities specific authority to levy B & O taxes. RCW 35A.11.050 states:

> The general grant of municipal power conferred by this chapter and this title on legislative bodies of noncharter code cities and charter code cities is intended to confer the greatest power of local self–government consistent with the Constitution of this state and shall be construed liberally in favor of such cities. Specific mention of a particular municipal power or authority contained in this title or in the general law shall be construed as in addition and supplementary to, or explanatory of the powers conferred in general terms by this chapter.

Algona argues that these statutes provide sufficient authority for it to impose a B & O tax on the County–operated transfer station. It also contends that any claim of immunity from taxation advanced by the County must be rejected under the holding of *Bellevue v. Patterson,* 16 Wn. App. 386, 556 P.2d 944, *review denied,* 89 Wn.2d 1004 (1977).

In *Bellevue,* the Court of Appeals upheld a Bellevue B & O tax imposed on a King County water district and the Eastgate sewer district. Both the water and sewer districts were municipal corporations serving customers inside the Bellevue city limits. The court analyzed the issue presented

only in terms of *exemptions* from taxation. The issue of municipal corporation immunity from such a tax was never raised.

*Bellevue* buttressed its holding in authorizing Bellevue to tax municipal sewer and water districts on *Seattle v. State,* 59 Wn.2d 150, 367 P.2d 123 (1961). This analysis is erroneous because in *Seattle* the Legislature gave express authorization to tax municipal corporations in RCW 82.04.030, which defined "person":

> "Person" or "company," herein used interchangeably, means any individual, receiver, assignee, trustee in bankruptcy, trust, estate, firm, copartnership, joint venture, club, company, joint stock company, business trust, *municipal corporation,* corporation, association, society, or any group of individuals acting as a unit, whether mutual, cooperative, fraternal, nonprofit, or otherwise and the United States or any instrumentality thereof.

(Italics ours.)

Neither Bellevue in *Bellevue v. Patterson, supra,* nor Algona had express legislative authority to tax functions of other municipal corporations.

Article 7, section 5 of the state constitution provides:

> No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied.

The general grant of taxation power on which Algona relies in RCW 35A.11.020 contains no *express* authority to levy a tax on the State or another municipality. To allow the City to impose the tax in this case would violate the established rule that municipalities must have specific legislative authority to levy a particular tax. *Citizens for Financially Responsible Gov't v. Spokane, supra; Hillis Homes, Inc. v. Snohomish Cy., supra.*

The governmental immunity doctrine provides that one municipality may not impose a tax on another without express statutory authorization. *See generally* 84 C.J.S. *Taxation* § 213 (1954); 1 C. Sands & M. Libonati, *Local Government Law* § 5.14 (1981). The majority of jurisdic-

tions adhere to this rule on the theory that a local tax imposed on a political subdivision such as a county is tantamount to a tax imposed on the State. *Salt River Project Agricultural Imp. & Power Dist. v. Phoenix,* 129 Ariz. 398, 631 P.2d 553 (Ct. App. 1981); *Dickinson v. Tallahassee,* 325 So. 2d 1 (Fla. 1975); *Philadelphia v. Southeastern Pa. Transp. Auth.,* 8 Pa. Commw. 280, 303 A.2d 247 (1973); *Willoughby Hills v. Board of Park Comm'rs,* 3 Ohio St. 2d 49, 209 N.E.2d 162 (1965). In *Dickinson,* the Florida court outlined the policy rationale for governmental tax immunity.

> The question of "immunity" is more than merely a facial exercise in constitutional and statutory construction. There are compelling policy reasons for the doctrine in terms of fiscal management and constitutional harmonization. . . . The State would have no way to anticipate revenue needs or appropriate funds sufficient to meet those variant tax burdens. Thus, it is inconsistent with sound governmental principles to suggest that a state which cannot finance itself on a deficit basis would indirectly authorize an indeterminate amount of revenue to be taken from all of its citizens for the benefit of some of its municipal governments. A more logical approach to intergovernmental finance would require, as the State contends, a clear and direct expression of the State's intention to subject itself to selective, local tax burdens.

(Footnote omitted.) *Dickinson,* at 4.

The City argues that governmental immunity should not apply because the County operation of a solid waste transfer station is proprietary. This court has explicitly recognized that the disposal of solid waste is a governmental function. *Spokane v. Carlson,* 73 Wn.2d 76, 81, 436 P.2d 454 (1968). Where the primary purpose in operating the transfer station is public or governmental in nature, the county cannot be subject to the city B & O tax, absent express statutory authority. *See* C. Sands & M. Libonati § 5.14; *Salt River Project Agricultural Imp. & Power Dist. v. Phoenix, supra.* We hold that King County was operating in a governmental function.

CONCLUSION

Algona had no express statutory authority to impose a B & O tax on the transfer station owned and operated by King County. We hold the challenged ordinance is unconstitutional. Any payments of such B & O tax paid to Algona under protest shall be refunded to King County. *Bellevue v. Patterson, supra,* is overruled as to its provisions that are inconsistent with this opinion.

We reverse.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.