89 P.3d 217 (2004)
151 Wash.2d 359
ARBORWOOD IDAHO, L.L.C., a foreign limited liability company, Petitioner,
v.
CITY OF KENNEWICK, a municipal corporation, Respondent.
No. 73197-7.
Supreme Court of Washington, En Banc.
Argued October 30, 2003.
Decided May 6, 2004.
*218 Daryl Duane Jonson, Terri L. Tomich-Salinas, Cowan Walker PS, Richland, for Petitioner.
John Stephen Ziobro, Kennewick, for Respondent.
Charles Dana Zimmerman, Wenatchee, for Amicus Curiae Association of Washington Cities and Washington State Association of Municipal Attorneys.
Cameron Gordon Comfort, Atty Generals Ofc/Revenue Division, Maureen A. Hart, Olympia, for Amicus Curiae Attorney General.
William Colwell Severson, Seattle, for Amicus Curiae Rental Housing Association of Puget Sound.
MADSEN, J.
Arborwood Idaho, L.L.C. (Arborwood) challenges a City of Kennewick ordinance that imposes a monthly ambulance service charge on each household, business, and industry within Kennewick. The trial court granted summary judgment in favor of Kennewick, holding that the charge is a valid regulatory fee. Arborwood appealed and the Court of Appeals affirmed. We hold that Kennewick's charge exceeds the taxing authority granted to cities and towns under RCW 35.21.768 and that the charge is not justified as a regulatory fee, benefit charge, or a charge for direct services. Accordingly, we reverse the Court of Appeals.

*219 FACTS
RCW 35.21.766 authorizes a city or town to establish a system of ambulance service to be operated as a public utility of the city or town.[1] RCW 35.21.768 authorizes a city or town to levy and collect excise tax or to impose an additional tax for the act or privilege of engaging in the ambulance business or both.[2] Additionally, RCW 35.21.768 authorizes the levy and collection of the excise tax from all persons, businesses, and industries who are served and billed for the ambulance service.
Kennewick established an emergency medical and ambulance service for the residents of Kennewick. Kennewick Municipal Code (KMC) 9.36.010. It is operated as a public utility of Kennewick. Id. To cover the cost of providing this service, Kennewick levies and collects a monthly ambulance charge on each household, business, and industry within Kennewick served by the emergency medical and ambulance services. Former KMC 9.36.050 (1989). During the time relevant to this review the ambulance charge was $2.60 per month for each industry, business, and individual residential unit within Kennewick. Kennewick's ordinance provides that if an industry, business, or household fails to pay the ambulance charge, all the utility service will be cut off until the charge is paid in full. Former KMC 9.36.050(3).
Where one utility account covers multiple units, the person whose name appears on the utility account must pay the ambulance charge although the charge is, in fact, based on occupancy. Since 1989, Kennewick has determined occupancy for multiunit accounts each month through a cross-reference of Kennewick's water/sewer utility records with the records from the Benton County Public Utility District (PUD). Because the PUD has individual electronic meters or accounts for each unit whereas one utility account with Kennewick can serve multiple units, vacant or inactive accounts with the PUD are subtracted from the total number of units on the water utility account so that the ambulance charge is based on occupied units.
In 2000, Kennewick collected $733,000 from the ambulance charge as compared with a cost of $1,400,000 for providing the service. All the revenues from the ambulance charge are used for the operation, maintenance and capital needs of the emergency medical and ambulance service. The moneys collected from the ambulance charge may also be used to pay the cost of providing ambulance services to Kennewick residents who are uninsured or underinsured, because Kennewick residents have to pay $125 for nonemergency ambulance transport although they are not required to pay any fee for emergency ambulance services.[3]
*220 Until May 2000, after this suit commenced, former KMC 9.36.050 described the ambulance charge as an "excise tax." Former KMC 9.36.050(a).[4] Kennewick has since amended the ordinance to change the "excise tax" to a "utility charge."[5]Id.
In September 1992, Arborwood purchased an apartment complex consisting of 33 buildings containing a total of 188 apartment units. There are four separate meters for water and sewer, and Kennewick bills these utilities through four separate accounts, one for each meter. PUD provides and bills electricity. Accordingly, pursuant to former KMC 9.36.050(a), Kennewick billed and collected the ambulance charge from Arborwood for each occupied apartment unit in the complex at the rate of $2.60 per month per unit. Between January 1, 1999 and June 20, 2001, there were 27 ambulance calls made to Arborwood's apartment complex.
On February 12, 1999, Arborwood protested the ambulance charge, asserting that the ambulance charge must be imposed directly on the tenants rather than on Arborwood, the owner. Kennewick's finance manager rejected Arborwood's claims. Arborwood brought the matter to Kennewick's support services director, who upheld the finance manager's decision. Arborwood filed an appeal to the Kennewick appeals commission. The appeals commission affirmed the support service director's decision on April 26, 1999. Arborwood sought further review in the Benton County Superior Court by filing a notice of appeal, a petition for a writ of review, and complaint for declaratory judgment.
The parties filed cross motions for summary judgment and the trial court granted summary judgment in favor of Kennewick. In its memorandum opinion of July 11, 2001, the court determined that the ambulance charge was a valid regulatory fee. The court did not address the issue of whether the ambulance fee was an excise tax authorized under RCW 35.21.768.
Arborwood appealed. The Court of Appeals affirmed, characterizing the ambulance charge as a regulatory fee. Arborwood Idaho, L.L.C. v. City of Kennewick, 113 Wash. App. 875, 889, 55 P.3d 1170 (2002). The court also held that the ambulance charge was neither an unconstitutional property tax nor an excise tax authorized by RCW 35.21.768. Id. at 885, 55 P.3d 1170.

ANALYSIS
Initially, Arborwood claims that we should not review the Court of Appeals holding that the ambulance charge is not an excise tax because Kennewick did not seek review of that holding. Under RAP 13.7(b), we will generally review only the questions raised in the petition for review and the answer, unless we order otherwise when granting the motion or petition. Here, the issue raised in the petition for review is whether the ambulance charge levied upon Arborwood under former KMC 9.36.050 is a tax or a fee. In granting the petition for *221 review, we ordered the parties to file special briefs on whether the ambulance charge is an excise tax. Accordingly, the issue of whether Kennewick's ambulance charge is authorized under RCW 35.21.768 is properly before this court.
Article VII, section 9 and article XI, section 12 of the Washington State Constitution permit the legislature to grant municipal authorities the power to levy and collect taxes for local purposes. CONST. art. VII, § 9; art. XI, § 12; King County v. City of Algona, 101 Wash.2d 789, 791, 681 P.2d 1281 (1984). However, these constitutional provisions are not self-executing. Algona, 101 Wash.2d at 791, 681 P.2d 1281; Carkonen v. Williams, 76 Wash.2d 617, 627, 458 P.2d 280 (1969). Accordingly, municipalities must have express authority, either constitutional or legislative, to levy taxes. Algona, 101 Wash.2d at 791, 681 P.2d 1281; Citizens for Financially Responsible Gov't v. City of Spokane, 99 Wash.2d 339, 342, 662 P.2d 845 (1983). It is also important to note that the police powers granted to local governments by article XI, section 11 of the Washington State Constitution do not include the power to tax. CONST. art. XI, § 11; Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995); Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 634, 854 P.2d 23 (1993); Hillis Homes, Inc. v. Snohomish County, 97 Wash.2d 804, 809, 650 P.2d 193 (1982) (Hillis Homes I).
Here, RCW 35.21.768 provides the explicit statutory authority permitting Kennewick to impose an ambulance charge on households, businesses, and industries in Kennewick.[6] Thus, it is necessary to examine whether Kennewick's ambulance charge is authorized by that statute.
Arborwood claims that RCW 35.21.768 allows Kennewick to impose the ambulance charge only on those entities actually using the ambulance service. Because Kennewick's ordinance imposes the charge on every household, business, and industry within Kennewick, regardless of actual service, Arborwood contends that Kennewick exceeds its statutory authority.
Kennewick claims, however, that limiting the imposition of the ambulance charge to those who actually use the ambulance service impermissibly adds language to the statute and distorts its natural meaning. Essentially, Kennewick's position is that RCW 35.21.768 authorizes the city to impose an ambulance charge for the availability of ambulance services.
The court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent. If the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002); State v. J.M., 144 Wash.2d 472, 480, 28 P.3d 720 (2001). A tax statute must be construed as a whole to ascertain the intent of the legislature. Group Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wash.2d 391, 401, 722 P.2d 787 (1986). If a tax statute is ambiguous, the statute must be construed against the taxing authority. Id.
Here, RCW 35.21.768 does not expressly state that only actual users of the ambulance service are subject to the ambulance charge. However, if the expressions "all persons ... served and billed" means "all persons served" plus "all persons billed," and "served" includes "potentially served," Kennewick is correct. However, we need not resolve the meaning of the terms "billed and served" in RCW 35.21.768 because the statute also provides that the ambulance service charge be imposed as an "excise tax." Thus, the only express taxing authority provided by the legislature in RCW 35.21.768 is to impose ambulance charges as excise taxes. As explained below, Kennewick's charges do not fall within the scope of the statute's taxing authority.
*222 Our cases establish that an assessment is a valid excise tax if (1) the obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the excise tax, and (2) the element of absolute and unavoidable demand is lacking. Covell, 127 Wash.2d at 889, 905 P.2d 324; High Tide Seafoods v. State, 106 Wash.2d 695, 699, 725 P.2d 411 (1986); Black v. State, 67 Wash.2d 97, 99, 406 P.2d 761 (1965). The subject of the excise tax under RCW 35.21.768 is ambulance service and the tax is to be imposed on those who are "served and billed for said ambulance service."
Kennewick argues that it has broad authority to impose an excise tax not only on those receiving the service but also for the availability of ambulance service, relying on Whatcom County v. Taxpayers of Whatcom County Solid Waste Disposal District, 66 Wash.App. 284, 831 P.2d 1140 (1992). In Whatcom County, residents in Whatcom Solid Waste Disposal District were charged an excise tax to fund solid waste disposal service. 66 Wash.App. at 286-87, 831 P.2d 1140. The Court of Appeals held that Whatcom County was authorized to levy and collect an excise tax from those living in a solid waste disposal taxing district. Id. at 296, 831 P.2d 1140. The statute, RCW 36.58.100, explicitly authorized the legislative authority of any county with a population of less than one million, including Whatcom County, to establish one or more solid waste disposal districts. They were designated to be taxing districts within the meaning of article VII, section 2 of the Washington Constitution. CONST. art. VII, § 2; Whatcom County, 66 Wash.App. at 287, 831 P.2d 1140. Whatcom County established its Solid Waste Disposal District pursuant to the statute. Whatcom County, 66 Wash.App. at 288, 831 P.2d 1140. The statute also explicitly authorized the imposition of an excise tax by virtue of living in a certain waste disposal taxing district. RCW 36.58.140.
Unlike the statute in Whatcom County, neither RCW 35.21.766 nor RCW 35.21.768 authorizes the creation of a taxing district or imposition of a tax "for the privilege of living in or operating a business in a ... taxing district" as does RCW 36.58.140. In addition, in Whatcom County this court identified the taxing event justifying imposing an excise tax as the transfer of refuse from a residential or commercial customer to a refuse hauler. Id. at 294, 831 P.2d 1140. In contrast, Kennewick's ordinance imposes its ambulance service excise tax on its water/sewer customers. Kennewick fails to explain why the receipt of water/sewer services triggers an excise tax on ambulance service.
A utility excise tax requires a transaction as a basis for taxation, such as the purchase of electricity, gas, water, and telephone service. 16 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 44.190.40, at 865 (3d rev. ed.1994). The purchase of the service is the key element justifying a utility excise tax. For example, a person who does not purchase electricity service from a utility corporation is not required to pay an excise tax on such services. Here, the ambulance service excise tax is billed to the city's water/sewer customers. But, RCW 35.21.768 does not permit a tax on water/sewer services; instead, the statute only authorizes a tax on ambulance services.
Next, Kennewick argues the ambulance charge satisfies the two-prong test for an excise tax because renting an apartment is a voluntary act, relying on Washington Public Ports Ass'n v. Dep't of Revenue, 148 Wash.2d 637, 652, 62 P.3d 462 (2003). There private lessees of publicly owned property were subject to a leasehold excise tax under chapter 82.29A RCW. Pub. Ports Ass'n, 148 Wash.2d at 641, 62 P.3d 462. However, a lessor was responsible, by statute, for collecting the tax from the lessees and remitting it to the Department of Revenue (DOR). Id. at 643-44, 62 P.3d 462; see RCW 82.29A.050(2). If the lessor failed to remit the excise tax after collecting the tax from the lessees, the lessor was held liable. Municipal corporations who were leasing their properties to private persons sued DOR, claiming that the leasehold excise tax was, in fact, an unconstitutional tax on their property. Pub. Ports Ass'n, 148 Wash.2d at 641-42, 62 P.3d 462.
In examining whether the leasehold tax was a valid excise tax, we suggested that *223 permitting a private lessee to occupy a public building was a voluntary act. Id. at 652, 62 P.3d 462. Following that logic, Kennewick contends that renting an apartment is a voluntary act. However, Kennewick overlooks an important fact: nothing in RCW 35.21.768 suggests that the legislature authorized an excise tax on rental transactions to fund the city's ambulance service. Rather, the statute provides for a tax to be levied and collected "from all persons, businesses, and industries who are served and billed for said ambulance service." RCW 35.21.768. Additionally, the tax here is not limited to apartment dwellers. It is also levied against households and businesses that may or may not be rented.
We hold that Kennewick's ambulance charges exceed the authority provided by RCW 35.21.768.
Kennewick alternatively argues that the ambulance charge is a utility fee. The city contends that its authority to impose utility fees emanates from its police power under the Washington Constitution. CONST. art. XI, § 11. The Court of Appeals agreed with Kennewick. Arborwood, 113 Wash.App. at 885, 55 P.3d 1170.
If the ambulance service is governmental in nature, general police power derived from article XI, section 11 of the Washington State Constitution is the appropriate authority. This is because general police power is strongly linked to a municipality's governmental function. See Phinney v. City of Seattle, 34 Wash.2d 330, 332, 208 P.2d 879 (1949) (pointing out that a city performs its governmental function under its police power).
The principal test in distinguishing governmental functions from proprietary functions of government is whether the act performed is for the common good of all or whether it is for the special benefit or profit of the corporate entity. Okeson v. City of Seattle, 150 Wash.2d 540, 550, 78 P.3d 1279 (2003); Lakoduk v. Cruger, 47 Wash.2d 286, 288-89, 287 P.2d 338 (1955) (citing Hagerman v. City of Seattle, 189 Wash. 694, 701, 66 P.2d 1152 (1937)).
RCW 35.21.766 specifically authorizes a municipality such as Kennewick to establish and operate an ambulance service as a municipal utility whenever "the city or town is not adequately served by existing private ambulance services." Additionally, ambulance services have traditionally been operated by private companies. These points arguably suggest that the ambulance service is proprietary in nature. However, in Teter v. Clark County, 104 Wash.2d 227, 704 P.2d 1171 (1985), even though the term "utility" was used for a sewerage system, we determined that a municipality operates a sewerage system under its governmental function. See Town of Steilacoom v. Thompson, 69 Wash.2d 705, 709, 419 P.2d 989 (1966); State ex rel. Church v. Superior Court, 40 Wash.2d 90, 91, 240 P.2d 1208 (1952).
Assuming, without deciding, that the authority under RCW 35.21.768 implicates a governmental function, and thus a general police power, the ambulance charge must still be justified as a fee under three factors established in Covell, 127 Wash.2d at 879, 905 P.2d 324. The analysis under the three factors is vital because there are different restrictions for imposing taxes versus imposing fees and legislative bodies may impose charges in the name of fees that are, in fact, taxes in disguise. Okeson, 150 Wash.2d at 552, 78 P.3d 1279; Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001).
The first factor is whether the primary purpose of the county or city is to accomplish desired public benefits which cost money or whether the primary purpose is to pay for a regulatory scheme, a particular benefit conferred or mitigation of burden caused. Samis, 143 Wash.2d at 806, 23 P.3d 477; Covell, 127 Wash.2d at 879, 905 P.2d 324; Hillis Homes I, 97 Wash.2d at 809, 650 P.2d 193. If the primary purpose is to raise revenue used for the desired public benefit, the charges are a tax. If the primary purpose is to regulate the fee payersby providing them with a targeted service or alleviating a burden to which they contributethat would suggest that the charge is an incidental tool of regulation. Samis, 143 Wash.2d at 806-07, 23 P.3d 477; Covell, 127 Wash.2d at 879, 905 P.2d 324; Teter, 104 Wash.2d at 239, 704 P.2d 1171.
*224 The Court of Appeals concluded that the ambulance charge is a fee under the first factor because the charge regulates the fee payers by providing them with a target service, a 24-hour emergency service. Arborwood, 113 Wash.App. at 887, 55 P.3d 1170. However, nothing in the Kennewick ordinance regulates its residents' use of the ambulance service. The language in former KMC 9.36.010 is very general in nature and lacking an overall plan for regulating emergency and ambulance services. In that sense, this case is different from Teter, where Clark County collected the charge to enforce regulatory schemes such as runoff control ordinances and erosion control ordinances and would adopt a single plan for a drainage area. Teter, 104 Wash.2d at 239, 704 P.2d 1171.
Additionally, this case is distinguishable from King County Fire Protection District No. 16 v. Housing Authority, 123 Wash.2d 819, 872 P.2d 516 (1994), the case on which the Court of Appeals relied. In that case, benefit charges at issue were based on such factors as insurance savings, water source, and distance from fire service facilities. Id. at 824-25, 872 P.2d 516. Under the statute relevant to the benefit charges, the charges could be individually determined and the amount charged could be challenged by individual property owners; see Fire Prot. Dist., 123 Wash.2d at 834, 872 P.2d 516; former RCW 52.18.010 (1990). In contrast, the fee in this case is flat at $2.60 per month, regardless of the distance from a hospital or the frequency of ambulance calls.
Under the first factor, the ambulance charge resembles a tax rather than a regulatory fee, a benefit charge, or a fee charged for a direct service.
The second factor is whether the money collected must be allocated only to the authorized purpose. Samis, 143 Wash.2d at 806, 23 P.3d 477; Covell, 127 Wash.2d at 879, 905 P.2d 324; Teter, 104 Wash.2d at 233-34, 704 P.2d 1171. If the money must be allocated only to the authorized purpose, the charge is considered to be a fee. Samis, 143 Wash.2d at 809, 23 P.3d 477.
The ambulance charge is used exclusively for the operation, maintenance, and capital needs of the emergency medical and ambulance service. Additionally, the revenue from the ambulance charge was about half of the cost of the ambulance service in 2000. Because the charges are used exclusively for the operation, maintenance, and capital needs of the ambulance service, the charges are more likely to represent a fee than a tax under the second Covell factor.
The third factor is whether there is a direct relationship between the fee charged and the service received by those who pay the fee or between the fee charged and the burden produced by the fee payer. Samis, 143 Wash.2d at 806, 23 P.3d 477; Covell, 127 Wash.2d at 879, 905 P.2d 324; Teter, 104 Wash.2d at 232, 704 P.2d 1171. If no such relationship exists, the charge is probably a tax in fee's clothing. Samis, 143 Wash.2d at 811, 23 P.3d 477. On the other hand, if such a direct relationship exists, the charge may be deemed a fee even though the charge is not individualized according to the benefit accruing to each fee payer or the burden produced by the fee payer. Id. at 811, 23 P.3d 477; Covell, 127 Wash.2d at 879, 905 P.2d 324. As long as a direct relationship exists, only a practical basis for the rates is required, not mathematical precision. Samis, 143 Wash.2d at 811, 23 P.3d 477; Teter, 104 Wash.2d at 238, 704 P.2d 1171.
Residents of Arborwood received ambulance services 27 times during a two-and-a-half-year period. However, Kennewick advances no argument as to how this frequency relates to the flat $2.60 monthly charge imposed on every household, including every resident of Arborwood regardless of actual use of the ambulance service. Additionally, the flat fee scheme does not demonstrate a direct relationship between the fee and the benefit received by Arborwood residents unlike the schemes in Teter and Fire Protection District. In Teter, the fee charged depended on categories of buildings and was set based on formulas devised after studies of engineering reference material, aerial photographs, contour maps, and on-site examinations of some of the properties within the drainage basin. Teter, 104 Wash.2d at 237, 704 P.2d 1171. In Fire Protection District, the benefit charge depended on the distance *225 from regularly maintained fire protection equipment, the level of fire prevention services provided to the properties, or the need of the properties for specialized services. Fire Prot. Dist., 123 Wash.2d at 831, 872 P.2d 516. Thus, under the third factor the ambulance charge resembles a tax rather than a fee.
Using the Covell factors, we conclude that the ambulance charges assessed by Kennewick constitute an unauthorized tax.
Finally, amici the State of Washington (the State), the Association of Washington Cities, and the Washington State Association of Municipal Attorneys argue that RCW 35.21.766 impliedly authorizes Kennewick to impose the ambulance charge on every household, business, and industry as a utility fee. Amici assert that a municipality may exercise powers expressly granted and those necessarily implied, such as the powers to do such acts as may be reasonably necessary to achieve the objective, relying on Sundquist Homes, Inc. v. Snohomish County Public Utility District No. 1, 140 Wash.2d 403, 997 P.2d 915 (2000) and Hillis Homes, Inc. v. Public Utility District No. 1, 105 Wash.2d 288, 714 P.2d 1163 (1986) (Hillis Homes II). Amici argue that powers implied in RCW 35.21.766 include the authority to charge those within the service area as reasonably necessary to fund the undertaking, relying on Twitchell v. City of Spokane, 55 Wash. 86, 88, 104 P. 150 (1909), Faxe v. City of Grandview, 48 Wash.2d 342, 351-52, 294 P.2d 402 (1956), and Carstens v. Public Utility District No. 1 of Lincoln County, 8 Wash.2d 136, 151, 111 P.2d 583 (1941).
As a municipal corporation, Kennewick's authority is limited to those powers expressly granted and to powers necessary or fairly implied in or incident to the power expressly granted, and also those essential to the declared objects and purposes of the corporation. However, if there is a doubt as to whether the power is granted, it must be denied. City of Tacoma v. Taxpayers of Tacoma, 108 Wash.2d 679, 692, 743 P.2d 793 (1987).
In City of Tacoma, Tacoma adopted an ordinance regarding conservation programs, including a repayment to ratepayers who installed a conservation device. City of Tacoma, 108 Wash.2d at 683-84, 743 P.2d 793. Former RCW 35.92.050 (1985), on which Tacoma relied, did not refer to a municipality's authority to implement such a measure. Id. at 693, 743 P.2d 793. The statute authorized a municipality to regulate and control the use, distribution, and price of the utilities. Id. at 692, 743 P.2d 793. We found implied authority for the conservation programs because the programs had a sufficiently close nexus to the purpose and object the legislature intended to serve in granting the power to operate an electric utility. Id. at 696, 743 P.2d 793.
In Sundquist, a private developer asked an owner of electrical utility facilities to relocate such facilities located on the land Sundquist developed. The electrical utility owner passed the relocation cost to Sundquist. 140 Wash.2d at 405, 997 P.2d 915. While the statutes the utility owner relied on did not include express authority to pass the relocation costs on to the land owner, we found that the expressly granted power to maintain facilities and set rates for electrical energy and other services includes, by implication, the power to charge private developers for the costs of relocation. Id. at 410-12, 997 P.2d 915.
In Hillis Homes II, the provider of water service charged a general facilities charge and a connection fee to a customer. The customer challenged the validity of such charges. Hillis Homes II, 105 Wash.2d at 289, 714 P.2d 1163. The provider relied on statutes that authorized the provider to sell, regulate and control the use, distribution, and price of water as well as to set rates for said water services. Id. at 297-98, 714 P.2d 1163. We found implied authority for the provider to impose the charge and fee at issue. Id. at 298, 714 P.2d 1163.
Here, unlike those three cases, RCW 35.21.766 includes no language expressly authorizing a municipality to set rates for an ambulance service or to regulate the ambulance service. Rather, the legislature explicitly provided authority for an excise tax to fund the ambulance services authorized by RCW 35.21.766.
*226 Accordingly, we are unpersuaded that RCW 35.21.766 implies the power to impose ambulance utility rates on every household, business, and industry mentioned in RCW 35.21.768.

CONCLUSION
We hold that the ambulance charge is not a valid excise tax under RCW 35.21.768. We also hold that the ambulance charge is not a valid fee under the Covell analysis. Accordingly, we reverse the judgment of the Court of Appeals.
ALEXANDER, C.J., JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS, OWENS, and FAIRHURST, JJ., concur.
NOTES
[1] RCW 35.21.766 states:

Ambulance servicesEstablishment authorized.
Whenever the legislative authority of any city or town determines that the city or town or a substantial portion of the city or town is not adequately served by existing private ambulance service, the legislative authority may by appropriate legislation provide for the establishment of a system of ambulance service to be operated as a public utility of the city or town or operated by contract after a call for bids.
[2] RCW 35.21.768 states:

Ambulance servicesExcise taxes authorizedUse of proceeds.
The legislative authority of any city or town is authorized to adopt ordinances for the levy and collection of excise taxes and/or for the imposition of an additional tax for the act or privilege of engaging in the ambulance business. Such business and occupation tax shall be imposed in such amounts as fixed and determined by the legislative authority.
The excise taxes other than the business and occupation tax authorized by this section shall be levied and collected from all persons, businesses, and industries who are served and billed for said ambulance service owned and operated or contracted for by the city or town in such amounts as shall be fixed and determined by the legislative authority of the city or town.
All taxes authorized pursuant to this section shall be construed to be taxes other than a retail sales tax defined in chapter 82.08 RCW and a use tax defined in chapter 82.12 RCW, and the city or town shall appropriate and use the proceeds derived from all taxes authorized by this section only for the operation, maintenance and capital needs of its municipally owned, operated, leased or contracted for ambulance service.
[3] For nonresidents of Kennewick, fees for emergency ambulance service are $385 and those for nonemergency transport are $270. Nonresidents of Kennewick are eligible for the nonemergency ambulance transport service only when there is no private carrier available. A Kennewick resolution adopted in 1989 describes these services and fees.
[4] Former KMC 9.36.050 (1989) stated:

9.36.050 EXCISE TAXBILLINGREPORTING. An excise tax shall be levied and collected from all households, businesses and industries served by emergency medical and ambulance services as follow:
(a) That each industry, business and household shall be assessed the emergency medical and ambulance service charge monthly and billed not less than bi-monthly, as an excise tax. The owner and the occupant of industries, businesses and households are jointly responsible for this excise tax. Taxes will be billed only to that person whose name appears on the utility account.
(Emphases added.)
[5] The pertinent part of KMC 9.36.050 states:

9.36.050 Utility ChargeBillingReporting: A utility charge shall be levied and collected from all households, businesses and industries served by emergency medical and ambulance services as follow:
(1) That each industry, business and household shall be assessed the emergency medical and ambulance service charge monthly and billed not less than bi-monthly, as a utility charge. The owner and the occupant of industries, businesses and households are jointly responsible for this charge. Charges will be billed only to that person whose name appears on the utility account.
(Emphasis added.)
[6] Kennewick cites RCW 35A.82.020 to justify the ambulance charge. RCW 35A.82.020 grants code cites authority to levy a business and occupation tax. Algona, 101 Wash.2d at 792, 681 P.2d 1281. However, this section only authorizes code cites to impose a business and occupation tax on those engaged in some kind of businesses, not on the users of businesses. Accordingly, RCW 35A.82.020 is not a taxing authority on which Kennewick can rely.