**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| NICHOLE PAYTON, | ) | No. 38568-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER AMENDING |
| SAMANTHA NELSON, SAMUEL | ) | OPINION |
| CAMPBELL AND ALL OTHER | ) | |
| OCCUPANTS, | ) | |
| | ) | |
| Appellants. | ) | |

The court hereby amends its opinion filed March 7, 2023, as follows:

In the second full paragraph on page 9, the sentence that begins "While the obligation . . ." shall be amended as follows:

While the obligation was made subject to the availability of amounts appropriated for this purpose, the legislature had appropriated, effective May 18, 2021, $41.28 million to OCLA for fiscal year 2022.

PANEL: Judges Siddoway, Lawrence-Berrey, and Staab

FOR THE COURT:

_____
GEORGE FEARING
CHIEF JUDGE

**FILED**
**MARCH 7, 2023**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| NICHOLE PAYTON, | ) | |
| | ) | No. 38568-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAMANTHA NELSON, SAMUEL | ) | PUBLISHED OPINION |
| CAMPBELL AND ALL OTHER | ) | |
| OCCUPANTS, | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, C.J. — Between June and November 2021, as a pandemic-related eviction moratorium was coming to an end and legislation modifying eviction rights and creating new rights for indigent tenants was being implemented, Nichole Payton attempted to evict Samantha Nelson and Samuel Campbell from their rented mobile home. At the show cause hearing in the unlawful detainer action, the tenants claimed a statutory right to a lawyer, but one had not yet been appointed. The trial court construed the new right to counsel provision, RCW 59.18.640, as not guaranteeing counsel under the circumstances.

This was error. Ms. Nelson and Mr. Campbell had asserted defenses to eviction that should have been heard after a lawyer was appointed to represent them. We reverse the judgment of eviction and remand for further proceedings.

No. 38568-0-III
*Payton v. Nelson*


FACTS AND PROCEDURAL BACKGROUND

On March 18, 2020, Governor Jay Inslee, responding to the COVID-19 pandemic, issued Proclamation 20-19, placing a temporary moratorium on many residential evictions.[1]  The original moratorium did not prohibit landlords from bringing unlawful detainer actions against a holdover tenant at the end of a fixed term (the type of tenancy at issue here), but on April 16, 2020, Governor Inslee issued a second proclamation extending the moratorium, which did.  The second proclamation, Proclamation 20-19.1, was to remain in effect until June 4, 2020, and provided in relevant part:

> Landlords . . . are prohibited from serving or enforcing, or threatening to serve or enforce, any notice requiring a resident to vacate any dwelling . . . . This prohibition applies to tenancies or other housing arrangements that have expired or that will expire during the effective period of this Proclamation.  This prohibition applies unless the landlord, property owner, or property manager attaches an affidavit attesting that the action is necessary to respond to a significant and immediate risk to the health or safety of others created by the resident.

Proclamation 20-19.1, at 3.

On May 8, 2020, Samantha Nelson and Samuel Campbell entered into an 11-month agreement to rent a mobile home in Pullman from Nichole Payton.  The lease agreement provided for a fixed term that would end on April 30, 2021, with no month-to-month extensions.

---

[1] All of the governor's proclamations cited herein are presently available at https://www.governor.wa.gov/office-governor/official-actions/proclamations, where they can easily be pulled up by entering the proclamation number and version (e.g., "20-19.1") in the "Search Terms" window.

No. 38568-0-III
*Payton v. Nelson*

Additional proclamations by Governor Inslee extended the eviction moratorium, modifying some of its provisions. Proclamation 20-19.2, which was adopted on June 2, 2020, and was to remain in effect until August 1, 2020, added an exception to the prohibition on evictions for a landlord, property owner, or manager who "provides at least 60 days' written notice of intent to (i) personally occupy the premises as a primary residence, or (ii) sell the property." Proclamation 20-19.2, at 3. Succeeding proclamations were issued by the governor in July 2020 (Proclamation 20-19.3), October 2020 (Proclamation 20-19.4), December 2020 (Proclamation 20-19.5), and March 2021 (Proclamation 20-19.6).

According to Mr. Campbell, in early February 2021, he and Ms. Nelson received a voice or text message from Ms. Payton informing them that their lease would not be renewed upon its expiration in April because Ms. Payton's daughter intended to move into the residence. Proclamation 20-19.5 was then in effect, and continued to provide an exception for landlords providing at least 60 days' written notice of an intent to *personally* occupy the premises as a primary residence or sell the property. Proclamation 20-19.5, at 4. The proclamation contained the additional requirement that "[s]uch a 60-day notice of intent to sell or personally occupy shall be in the form of an affidavit signed under penalty of perjury." *Id.* No written notice had been provided to Ms. Nelson and Mr. Campbell by the April 30, 2021 end of their lease term, and they chose to continue residing in the mobile home.

3

No. 38568-0-III
*Payton v. Nelson*

In spring 2021, the legislature enacted two bills that affected the rights and duties of Washington landlords and tenants. One was Engrossed Second Substitute Senate Bill (E2SSB) 5160, which became effective on April 22, 2021, and bolstered tenant protections, including by creating a right to counsel for indigent tenants facing eviction. Appointment of counsel was to be implemented and administered by the Washington State Office of Civil Legal Aid (OCLA). LAWS OF 2021, ch.115, §§ 8-9. The second was Engrossed Substitute House Bill (ESHB) 1236, which became effective on May 10, 2021, and enumerates allowable grounds for eviction under residential landlord-tenant law. *See* LAWS OF 2021, ch. 212. ESHB 1236 provided that one type of "cause" for evicting a tenant, subject to proper notice, was the property owner's intent that a member of her or his immediate family occupy the property as a primary/principal residence. *Id.* at § 2(2)(d), codified at RCW 59.18.650(2)(d).

Summit Realty served as a property agent for Ms. Payton, and on June 1, 2021, a Summit Realty employee prepared and allegedly served a "Ninety (90) Day Notice of Termination of Tenancy" on Ms. Nelson and Mr. Campbell. Clerk's Papers (CP) at 38 (boldface and some capitalization omitted). The notice demanded that Ms. Nelson and Mr. Campbell "quit and deliver up possession" of the premises by midnight on August 31, 2021. *Id.* (boldface omitted). It stated, "[y]our tenancy is being terminated due to . . . the property owner's or his/her immediate family's intent to occupy the property as their primary/principal residence." *Id.* While this constituted cause under the

4

No. 38568-0-III
*Payton v. Nelson*

recently-enacted legislation, Proclamation 20-19.6 remained in effect, and it continued to provide that the owner-intent-to-occupy exception to the eviction moratorium was limited to a landlord who intended to "personally" occupy the premises as a primary residence. Proclamation 20-19.6, at 5. The proclamation also required the notice to be in the form of an affidavit signed under penalty of perjury, which Summit Realty's notice was not.

The 90-day notice prepared by Summit Realty indicates it was addressed to Ms. Nelson and Mr. Campbell at the mobile home address. An attached proof of service form identifies seven different means of effecting service, including personal service and posting at the property. The Summit Realty employee indicated in completing the proof of service form only that she "personally mailed a true copy" to the tenants, "by first-class mail, postage prepaid." CP at 40 (emphasis omitted).

Proclamation 20-19.6 expired without further extension on June 30, 2021. On June 29, 2021, the governor issued a new Proclamation 21-09, which was no longer identified as a moratorium, but, instead, as related to tenancy preservation and "[a b]ridge to E2SSB [Engrossed Second Substitute Senate Bill] 5160."

Ms. Nelson and Mr. Campbell did not move out of the mobile home by August 31 as demanded. On September 17, 2021, Ms. Payton commenced the unlawful detainer action below by filing a summons and complaint and obtaining an order to show cause, all of which were personally served on Ms. Nelson that day.

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38568-0-III
*Payton v. Nelson*

The show cause hearing in the unlawful detainer action was held several months later, on November 3, 2021, after the court granted two continuances requested by Mr. Campbell. Although Ms. Nelson and Mr. Campbell had filed an answer and affirmative defenses at the time of the first continued hearing, they sought further continuances, including on November 3, because the new right to counsel program, codified in RCW 59.18.640, was not fully effective in Whitman County. Attorney Sara Humphries, who was prepared to represent them, had not yet been contracted by OCLA.

On the day before the show cause hearing, Ms. Humphries filed a limited notice of appearance "for the sole purposes of asserting Defendants' right to counsel under RCW 59.18.640(1)." CP at 94. She filed copies of the right to counsel legislation as well as an October 6, 2021 release from OCLA that identified the counties then certified to begin hearing eviction cases against indigent tenants. OCLA's release asserted that under the new right to counsel law:

> eviction cases involving low-income tenants may not proceed in any county unless and until the court has been notified that the right to counsel [RTC] program is operational in that county. OCLA anticipates that all counties will be certified and RTC appointments commenced by November 15, 2021. . . .

CP at 92.

When Ms. Humphries sought a further continuance, Ms. Payton's lawyer expressed his client's wish to proceed, arguing that further delays were not required by statute. He pointed out that RCW 59.18.640(1) provides, "[S]*ubject to the availability of*

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38568-0-III
*Payton v. Nelson*

*amounts appropriated for this specific purpose*," the court must appoint an attorney for

an indigent tenant. Rep. of Proc. (RP) at 6 (emphasis added). Ms. Humphries responded

that monies had been appropriated and the right was a funded right; the holdup was that

OCLA had not yet contracted with attorneys in Whitman County. She drew the court's

attention to OCLA's position that eviction cases involving indigent tenants could not

proceed without the appointment of counsel, but Ms. Payton's lawyer responded that the

release merely reflected OCLA's "interpretation" and he stood by his own interpretation.

RP at 8-9. The trial court, concluding that amounts were not available to the Whitman

County Superior Court with which it was able to appoint counsel, elected to proceed.

Mr. Campbell was present, but expressed concern at having to proceed pro se,

stating, "I really don't understand a lot of these proceedings like this. Uhm, I do wish for

my counsel. I'm not really understanding what's going on here." RP at 14. The court

took a recess to allow Mr. Campbell to speak privately with Ms. Humphries. The matter

then proceeded with Mr. Campbell representing himself.

Consistent with his and Ms. Nelson's earlier-filed answer, Mr. Campbell took

the position that Summit Realty's 90-day notice was issued in violation of Proclamation

20-19.6 because termination of the lease was predicated on Ms. Payton's intent for her

daughter to live in the home, rather than to live there herself. He took the position that he

and Ms. Nelson had not received the 90-day notice, postulating that a poorly-handwritten

address on the envelope had caused it to be misdirected. He also argued that according to

7

No. 38568-0-III
*Payton v. Nelson*

the proof of service, it was merely mailed to his and Ms. Nelson's residence when it was statutorily-required to be posted or handed to him or someone of suitable age and discretion.

Ms. Payton's lawyer acknowledged that the proof of service indicated that the notice was only mailed, but characterized it as "a scrivener's error" and represented that the notice was mailed and posted at the residence. RP at 19. He called as a witness Matt Ruck, a process server, who testified that in a conversation with Mr. Campbell on August 1, Mr. Campbell acknowledged having received the 90-day notice and said he was looking for somewhere else to live.

Following a recess to review the relevant statutes, the trial court ruled, citing RCW 59.12.030(3) and (4) as establishing that the 90-day notice had not been statutorily required, but was a courtesy notice. It stated it would sign an order restoring the property to Ms. Payton 14 days hence, "and a forcible entry and removal if that property has not been vacated by that time." RP at 37-38. A judgment of eviction was entered, as was a writ of restitution. Ms. Nelson and Mr. Campbell appeal.

## ANALYSIS

The controlling issue on appeal is whether the trial court deprived Ms. Nelson and Mr. Campbell of their statutory right to counsel. If it did, they are entitled to a new show

8

No. 38568-0-III
*Payton v. Nelson*

cause hearing.[2]  At issue is the meaning of RCW 59.18.640(1).

The meaning of a statute is a question of law, reviewed de novo.  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).  Our fundamental objective in interpreting a statute is to ascertain and carry out the legislature's intent. *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent.  *Campbell & Gwinn*, 146 Wn.2d at 9-10. The plain meaning of a statute is gleaned from "'all that the Legislature has said in the . . . related statutes which disclose legislative intent about the provision in question.'" *State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) (alteration in original) (quoting *Campbell & Gwinn*, 146 Wn.2d at 11).

At the time of the show cause hearing, RCW 59.18.640(1) provided that the court "must appoint an attorney for an indigent tenant in an unlawful detainer proceeding." While the obligation was made subject to the availability of amounts appropriated for this purpose, the legislature had appropriated, effective April 25, 2021, $41.28 million to OCLA for fiscal year 2022.  ENGROSSED SUBSTITUTE S.B. (ESSB) 5092, § 117.  Of that amount, $10,772,000 was appropriated solely for implementation of E2SSB 5160,

---

[2] Ms. Payton does not attempt to make the difficult argument that if the trial court erred, it was harmless.

9

No. 38568-0-III
*Payton v. Nelson*

including representation of indigent tenants in unlawful detainer cases. ESSB 5092, at § 117(7).

E2SSB 5160 explicitly recognized that OCLA would need time to properly implement the right to legal representation for indigent tenants. E2SSB 5160, § 9(2), codified at RCW 2.53.050(2). Nevertheless, the legislation had been made effective immediately upon signature by the governor. E2SSB 5160, § 21. Section 8(1) made the court's duty to appoint counsel effective immediately, subject to the appropriation that had been made ("the court must appoint an attorney . . ."), just as section 10(1) immediately advised tenants of their right (requiring 14-day summonses to say, "State law provides you the right to legal representation . . . if you are a qualifying low-income renter"). *See also* Governor Inslee's Proclamations 21-09, 21-09.1, and 21-09.2, providing that "[n]othing in this order modifies the requirement in section 8 of E2SSB 5160 that a court must appoint an attorney for an indigent tenant in an unlawful detainer proceeding."

It was unusual, to be sure, to mandate court-appointed counsel in cases that landlords could bring before procedures were in place to make the appointment. But the legislature characterized the problem being addressed as a public health emergency, explaining in section 1 of E2SSB 5160:

> Because the COVID-19 pandemic has led to an inability for tenants to consistently pay rent, the likelihood of evictions has increased . . . . [T]he governor has issued a temporary moratorium on evictions as of March

10

No. 38568-0-III
*Payton v. Nelson*

2020, with multiple extensions and other related actions, to reduce housing instability and enable tenants to stay in their homes.

. . . [I]t is the intent of the legislature with this act to increase tenant protections during the public health emergency, provid[ing] legal representation for qualifying tenants in eviction cases.

Given the context and all the legislature had to say in related provisions, it is unsurprising that unlawful detainer proceedings that had already been delayed would be delayed somewhat longer if OCLA did not have contracts in place in a given county. Critically, given plain language that the right to counsel and duty to appoint counsel existed immediately, the only reasonable reading of RCW 59.18.640(1) is that if indigent tenants did not have appointed counsel, an eviction proceeding would have to be delayed.

*Attorney fees*

Ms. Nelson and Mr. Campbell request an award of reasonable attorney fees on appeal, citing RAP 18.1, RCW 4.84.330, and section 37 of the parties' lease agreement, which provides, "Resident agrees to pay Lessor's attorney fees as authorized by RCW 59.18." CP at 17.

Under RAP 18.1(a), a party may recover attorney fees on appeal if authorized by applicable law. When a lease contains a unilateral attorney fee and cost provision, RCW 4.84.330 operates to make the provision bilateral.

To recover fees, the party must devote a section of its opening brief to the request. Ms. Nelson and Mr. Campbell comply in form, but they fail to identify the basis under chapter 59.18 RCW authorizing fees to a landlord on which they rely. Given the

11

No. 38568-0-III
*Payton v. Nelson*

controlling issue on appeal (representation by counsel), it is not clear that Ms. Payton

would have enjoyed a right to fees under the chapter that can be applied bilaterally to the

defendants.

We deny the request for fees, reverse the judgment of eviction, and remand for

proceedings consistent with this opinion.

Siddoway, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Staab, J.